**COMMERCIAL ENERGIES, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 90–5123.**

United States Court of Appeals,
Federal Circuit.

March 29, 1991.

Gregory Kellam Scott, Lowell Thomas Law Building, Denver, Colo., argued for plaintiff-appellant.

Martha H. DeGraff, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director.

Before NEWMAN, LOURIE and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Commercial Energies, Inc. appeals the June 29, 1990, order of the United States Claims Court, No. 90–300–C, denying for the second time Commercial Energies' motion to order the Air Force to comply with the April 16, 1990, order of that court to award a natural gas supply contract in accordance with a statutorily-required preference. Since we conclude that the Claims Court did not err, we affirm.

## BACKGROUND

On June 30, 1989, the Air Force issued a Request for Proposal, No. F39601–89–R0016, (the RFP) for supply of natural gas to three government Air Force facilities. The RFP consisted of four items: a Supply Adjustment Factor (SAF), a Transportation Adjustment Factor (TAF), a Supply Index Price, and a Williston Basin Interstate Index Price. The RFP stated that these four line items, when added together, would constitute the total contract price. A con-

tractor responding to this RFP would thus submit costs for each of these line items as well as a total price, which was the sum of these items.

However, when the RFP was first issued, it did not contain the evaluation preference provision of 48 C.F.R. § 219.7001 (1990), which states:

> Offers will be evaluated so as to give preference to offers submitted by SDB [small disadvantaged business] concerns. Each responsive offer, other than offers from SDB concerns, shall be adjusted for the purpose of price evaluation by adding a factor of 10 percent. The factor shall be applied on a line-item by line-item basis or to any group of line items on which award may be made as specifically provided by the solicitation....

That section thus requires that SDBs receive an evaluation preference, implemented by the government's increasing non–SDB total price bids or line items by ten percent. Appellant, which is an SDB, informed the contracting officer that the RFP lacked this clause. The contracting officer thereafter issued an amendment to the RFP, essentially a new RFP, which provided that the Air Force would apply the ten percent preference only to the SAF and TAF line items.

On or about October 25, 1989, appellant filed its contract offer with the Air Force and, at the same time, a bid protest with the General Accounting Office challenging the Air Force's limitation of the ten percent preference to the SAF and TAF line items. On April 5, 1990, appellant filed a complaint in the Claims Court requesting that the Air Force be enjoined from awarding the contract on the ground that it did not properly apply the mandatory ten percent evaluation preference. The government and appellant both moved for summary judgment.

The Claims Court concluded that the Air Force erroneously limited the preference to the two line items. On April 16th, it denied the government's motion, granted appellant's cross-motion, and enjoined the Air Force from awarding the contract at issue under an improper evaluation preference procedure. It held that the Air Force, under 48 C.F.R. § 219.7001, must apply the preference either to the total price or to every line item that constituted the basis for award of the contract. *Commercial Energies, Inc. v. The United States*, 20 Cl.Ct. 140, 150 (1990).

The Air Force subsequently issued a new RFP which instructed bidders to quote prices only for the TAF and SAF line items; the basis for the award would be the sum of those two prices. The Air Force, in considering bids on the contract, then applied the evaluation preference only to those two line items. Appellant filed a motion in the Claims Court asserting that the Air Force was not complying with the court's April 16th order. The court concluded that the Air Force's application of the preference to those two line items complied with the regulation since those two line items constituted the basis for the award; it therefore denied appellant's motion. Appellant subsequently asked for reconsideration. The Claims Court denied that motion and this appeal followed.

## DISCUSSION

■ The issue in this case is whether the Air Force complied with the small disadvantaged business preference set forth by Congress and the Department of Defense regulations. The construction of the statute is a question of law which we review *de novo*. *Frank's Livestock & Poultry Farm, Inc. v. United States*, 905 F.2d 1515, 1517 (Fed.Cir.1990). Whether the Air Force complied with the statute is a question of fact which we review under the clearly erroneous standard. *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7 (Fed.Cir.1990).

The Claims Court concluded that the Air Force applied the evaluation preference to all line items which constituted the basis of the award and thus complied with applicable law. Appellant argues that the Air Force awarded the contract on a price evaluation mechanism that was inconsistent with the total price award basis as stated in the RFP, and that it used an evaluation procedure that in effect nullified the man-

datory preference established by law and did so in a manner contrary to the Department of Defense's regulations.

### I. The Small Disadvantaged Business Preference

In 1987, Congress enacted section 1207 of the Defense Authorization Act, Pub.L. No. 99–661, 100 Stat. 3816 (1987) (codified as amended in scattered sections of 10 U.S.C.), entitled "Contract Goal for Minorities," to direct government defense contracts to small disadvantaged businesses and minority organizations. Section 1207(a), 100 Stat. 3973 (codified as amended at 10 U.S.C. § 2301 note (1988)), of the act states that:

[A] goal of 5 percent of the amount [of defense contract funds] shall be the objective of the Department of Defense ... for the total combined amount obligated for contracts and subcontracts entered into with—

(1) small business concerns, including mass media, owned and controlled by socially and economically disadvantaged individuals ...;

(2) historically Black colleges and universities; or

(3) minority institutions....

Section 1207(e)(3), 100 Stat. 3974 (codified as amended at 10 U.S.C. § 2301 note (1988)), provides that:

To the extent practicable and when necessary to facilitate achievement of the 5 percent goal described in subsection (a), the Secretary of Defense may enter into contracts using less than full and open competitive procedures ... but shall pay a price not exceeding fair market cost by more than 10 percent in payment per contract to contractors or subcontractors described in subsection (a).

To carry out the above objectives, the Department of Defense, under Pub.L. No. 100–180, § 806(b) (1988) (codified as amended at 10 U.S.C. § 2301 note (1988)),[1] promulgated 48 C.F.R. § 219.7001 (1990), which states that:

Offers [for government defense contracts] will be evaluated so as to give preference to offers submitted by SDB [small disadvantaged business] concerns. Each responsive offer, other than offers from SDB concerns, shall be adjusted for the purpose of price evaluation by adding a factor of 10 percent. The factor shall be applied on a *line-item by line-item basis* or to any *group of line items on which award may be made as specifically provided by the solicitation....*

(Emphasis added).

Congress, in section 1207, thus set forth a general defense procurement policy with regard to small disadvantaged businesses, and the Department of Defense followed with implementing regulations. We hold that, in implementing the preference, the Department of Defense was properly within the terms of the statute in requiring that only line-items that constitute the basis for an award, as stated in the request for proposal or solicitation, be increased by ten percent. We also hold that the Air Force complied with the Department of Defense regulations. We thus conclude that the Claims Court did not err in its decision.

### II. The Air Force's Compliance

The final RFP, modified following the Claims Court's April 16th order, asked bidding contractors to submit a price for the SAF and TAF factors for each government facility. A total contract price line specified that the sum of the SAF and TAF constituted the total contract price for that facility. The RFP stated that other items in the bid proposal sections which were blocked out in the bid forms and were thus not to be bid on, *viz.,* the Supply Index Price, Transport Index Price, and Transport Fuel Factor,[2] would be paid to the contractor at market rates.

The RFP stated that:

---

1. Section 806(b) provides in pertinent part:

   The Secretary shall carry out the requirement of subsection (a) [*i.e.,* ensuring that substantial progress is made in increasing awards of De-

partment of Defense contracts to section 1207(a) entities] through the issuance of regulations....

2. We note that the Transport Index Price and Transport Fuel Factor line items were not in the

offers will be evaluated by adding a factor of ten percent (10%) to offers from concerns that are not SDB concerns. . . .

It also stated that:

Award of a contract [for the three locations] . . . will be made to the technically qualified, responsible Offeror [*sic*] whose proposal offers the lowest total price for all locations.

The RFP stated that the contract would be awarded on the basis of the lowest total price, which, it clearly indicated, would be the sum of the SAF and TAF line items. Accordingly, under 48 C.F.R. § 219.7001, the Air Force applied the ten percent factor for non-SDB entities to the group of line items that constituted the total price, *i.e.*, the SAF and TAF line items. The Claims Court found that the Air Force properly did so and we conclude that that finding was not clearly erroneous.

Appellant argues that the government awarded the contract on the basis of less than total price and that this is inconsistent with the intent of Congress. We thus consider whether the court erred in concluding that the Department of Defense regulation was in compliance with the statute. The statute sets a goal, without setting forth a specific mechanism by which the Department of Defense should meet that goal. We note that in the House of Representatives Conference Report for the Defense Authorization Act, H.Rep. No. 99–1001, 99th Cong., 2nd Sess. (1987), the conferees stated that:

[the program under section 1207] needs time to operate before a determination can be made as to its success or failure, and . . . [issues of a specific set-aside or the 5% goal] shall not be considered by them in the fiscal year 1987, 1988, 1989 Defense Authorization bills or the Continuing Resolutions.

*Id.* at 525, U.S.Code Cong. & Admin.News 1986, pp. 6413, 6584. Thus, whether or not the means the Department has chosen to meet that goal are, will be, or have been effective is for Congress to judge after whatever period of time it considers appro-

priate has passed and experience under the program can be judged. It is clear to us, however, that Defense has provided a rational procedure and mechanism for meeting the Congressional goal by deciding to award a preference to SDB contractors based on "a line-item by line-item basis" or "any group of line items on which award may be based." It is not irrational to exclude from this preference cost factors over which a bidder has no control, factors which will be payable based on market prices. We therefore conclude that the Department was properly in compliance with the statute when it provided a rational procedure for meeting the statutory goal.

■ Appellant also argues that the Air Force awarded the contract in a manner inconsistent with the RFP. It reissued the RFP stating that an award would be made on the basis of the sum of the SAF and TAF line items. Since the RFP defines total price as including only those factors, the Air Force's procedure in awarding the contract on the basis thereof was in full compliance with the RFP. The Claims Court so found and we do not believe that this finding was clearly erroneous. We have considered appellant's other arguments and are not persuaded by them that the Claims Court erred.

## CONCLUSION

Based on the above analysis, we conclude that the Claims Court did not err in its construction of the small disadvantaged business preference and was not clearly erroneous in finding that the Air Force complied with the preference. Thus, its judgment is

AFFIRMED.

---

original RFP, whereas a Williston Basin Interstate Index Price line item was. The parties do not argue that this change in line items is relevant.